Thurman, C. J.
The plaintiff claims a right to maintain this in virtue of the first section of the water-craft law. The section is as follows:
“ That steamboats and other water-crafts navigating the waters within or bordering upon this state, shall bo liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing, or equipping the same, or due for wharf-age; aDd also for damages, arising out of any contract for the *328 transportation of goods or persons, or for injuries done to persons or property by such craft; or for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger or hand on such steamboat, or other water-craft, at the time of the infliction of such damage or injury.”
The clause of the section that is relied on, is that making the vessel liable “ for damages arising out of any contract for the transportation of goods.”
328] *It is not easy to discover the nature of the transaction in which this controversy originated. The testimony leaves it doubtful whether it was a mere loan to be repaid in money out of freights to be earned by the vessel, or an advance of freights, for which the plaintiff, and not his consignees, would be liable upon the transportation of his goods; or, an advance of freights, which such consignees, and not the plaintiff, were the proper persons to pay.
If it was a mere loan, McGuire’s Adm’rs v. The Canal-boat Kentucky, 20 Ohio, 62, is a direct authority for saying this action can not be maintained.
If it was an advance of Money upon an executory contract for the transportation of the plaintiff’s goods, a mere payment, in advance, of freights which he was the proper person to pay, the case is not essentially different from that of the Canal-boat Montgomery v. Kent, 20 Ohio, 54, and the action must fail.
It is not, however, upon either of these grounds that the plaintiff relies. His counsel assume that the consignees were the persons to pay the freights, that the plaintiff had a right to require them to do so, or at least that they were not entitled to the goods without such payment, and finally, that they did, in fact, pay them ; and, upon these premises, it is argued, with much ingenuity, that the case of the Argyle, 17 Ohio, 460, fully supports this action.
But we are not satisfied that the proofs make the case here assumed. If we look at the written contract alone, perhaps the proper construction to give it would be that it is evidence of a loan upon the security of freights to be earned by the vessel. If we take into consideration the surrounding circumstances, we find that the goods, by whose transportation the freights were to be earned, were the plaintiff’s goods, and there is no testimony showing that any other person ought have paid the freights. For aught that appears, he may, himself, have been the consignee. If it be *329, 330 said that this can not be, because the freights were paid by the consignee, *it may be replied that it does not clearly appear how [329 they were paid; whether altogether in money, or partly in money and partly by a credit on the contract with the plaintiff. If the latter was the fact, it may well bo that the plaintiff was the consignee, and that he saw fit to indulge the owner of the vessel by paying him in money more than he was entitled to; or, in other words, by not requiring as large an application of the freights earned, to the discharge of the contract, as might have been insisted upon.
But whether the plaintiff was the consignee or not, it distinctly appears that the goods were his goods, and were transported for him, and if the money advanced was not a mere loan, it was an advance of freights, to pay which no one but he is shown to have been liable.
Upon the whole case, then, we incline to think that the transaction was a mere loan upon the security of, or to be repaid from freights to be earned by the vessel, or which is, perhaps, more probable, that it was simply a payment in advance upon an executory contract for the transportation of the plaintiff’s goods.
If it was either, this action can not, as I have before said, bo maintained.
This conclusion renders it unnecessary to decide whether, if the facts were as assumed by the plaintiff s counsel, the action would lie. '
As the only testimony in the case was that offered by the plaintiff, we are at liberty to give a judgment in bar, or to order a non-suit. We think it proper to do the latter.

Judgment of nonsuit

Warden, J.
The proposition contained in the second division of the syllabus, is one to which I can not subscribe. A contract for the transportation of goods is often made at the solicitation of the master or other officer of the boat, seeking to secure a “ good trip,” for the next venture of the vessel. Merchants hold the freight for the particular boat, under the pressure of such solicitations, and on promises that *the transportation shall be [330 promptly made. One nf the mischiefs to be remedied by the so-called steamboat law, was the violation of just such contracts. I think, rightly construed, the statute has supplied the remedy.